UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

WILLIAM HART                                                    CIVIL ACTION

VERSUS

THE OLD EVANGELINE DOWNS,
LLC, ET AL.                                                     NO.: 14-00644-BAJ-EWD

FINDINGS OF FACT AND CONCLUSIONS OF LAW

William Hart ("Plaintiff") filed this action against Old Evangeline Downs, LLC ("Defendant") after he sustained injuries from a slip and fall. A bench trial was held before the undersigned on June 13, 2016. The Court heard testimony from Plaintiff, Mr. Walter Guy, Mr. Joshua Kennerson, and Mr. Bryan Rubin and admitted into evidence the deposition of Dr. Albert Pearsall. Having considered the testimony and evidence at trial, the arguments of counsel, and the applicable law, the Court now issues the following Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52(a). To the extent any finding of fact may be construed as a conclusion of law, the Court adopts it as such. To the extent any conclusion of law may be construed as a finding of fact, the Court adopts it as such.

I. Background

Plaintiff, a sixty-five year old single leg amputee, was a patron at Evangeline Downs Racetrack & Casino ("the Racetrack") in Opelousas, Louisiana on November 6, 2014. Plaintiff went to the Racetrack during the evening to watch a horse he owned run in a race. Mr. Guy, a recent acquaintance of Plaintiff, accompanied him. That

1

evening, Plaintiff fell indoors while walking down a pathway in the direction of the Racetrack's clubhouse. Plaintiff fell on the pathway after following it past the Racetrack's food court. There was no signage or staff warning of a dangerous condition where Plaintiff fell. The site of Plaintiff's fall was in proximity to a recessed employee entrance ("the employee entrance") that was located on his right as he walked. After Plaintiff fell, two African-American male employees assisted him in standing.[1] Plaintiff and Mr. Guy then continued walking towards the clubhouse to watch his horse race. When the race finished, Plaintiff returned to where he fell to file an incident report. Plaintiff and Mr. Guy gave statements in connection with the incident report, along with two employees of Defendant, Mr. Kennerson and Mr. Rubin.

## II.  Video, Testimony, and Incident Statements

### A. Video

Defendant introduced into evidence a surveillance video that shows Plaintiff and Mr. Guy walking on the pathway—from the top of the frame towards the bottom—alongside the food court in the direction where Plaintiff fell. The video shows Mr. Guy walking in front of Plaintiff. Trailing Plaintiff and Mr. Guy are two African-American male employees, one of whom is pulling an empty dish cart while the other walks slightly ahead of the cart. The two employees are wearing black pants, tuxedo shirts, and bow ties. Just before the end of the video clip, the employee pulling the cart extends his left hand and points to something in front of him. At this moment of

---

[1] As will become apparent, the ethnicity of these employees is relevant to the testimony of Mr. Guy and Plaintiff.

the video clip, Plaintiff, Mr. Guy, and the employee walking ahead of the cart have already exited the frame. The video does not show Plaintiff's fall.

### B. Plaintiff's testimony and incident statement

Plaintiff testified that he slipped on a puddle of water that he did not see while he was walking on the pathway. Tr. 65:11—20. Plaintiff stated that after his foot hit the puddle, it slid forward and the more he tried to regain his balance, the more he slid until he ultimately fell. Tr. 65:24—66:10. While on the ground, Plaintiff stated that he noticed a dish cart was parked near the employee entrance that was dripping liquid, which had formed a puddle where he fell. Tr. 66:24—67:5; 68:9—17; 101:22—25; 110:13—111:14. Plaintiff testified that two male employees were standing near the parked cart before and after his fall. Tr. 65:11—20; 67:1—67:5; 100:3—11; 106:6—14. Unable to stand up without assistance, Plaintiff testified that these two male employees helped him at the request of Mr. Guy. Tr. 68:18—68:25; 100:8—11. Plaintiff further testified that after his fall, a cuff on his pant leg was damp and his hands were wet. Tr. 69:2—7.

In the statement Plaintiff gave later that evening regarding his fall, he wrote that he "was walking down in front of the gumbo bar on way to paddock for my way for my horse's race as I slipped with right foot went out from under me and I fell on my tail bone due to a puddle of water from a dish cart I did not see the puddle of water."[2]

---

[2] The written statements made on the day of the incident by Plaintiff, Mr. Guy, Mr. Rubin, and Mr. Kennerson are reproduced verbatim.

3

### C. Mr. Guy's testimony and incident statement

Mr. Guy testified that because Plaintiff ambulated slowly, he sometimes found himself walking ahead of Plaintiff during their time at the Racetrack. Tr. at 52:14—53:1. For this reason, Mr. Guy asserted that he would wait to allow Plaintiff to catch up to him.[3] *Id.* At the time of Plaintiff's fall, Mr. Guy stated that he was behind or alongside Plaintiff, and he observed the incident. *Id.* Specifically, Mr. Guy stated that he saw Plaintiff slip on a puddle of water that caused him to skid momentarily before falling. Tr. at 32:9—12; 35:8—36:2.

Immediately after the fall, Mr. Guy testified that he saw one dish cart parked near the employee entrance that was dripping water.[4] Tr. 37:12—38:6; 49:14—25. Mr. Guy also testified that two employees were standing near the leaking dish cart. Tr. 34:9—12; 40:17—21; 49:17—25. Mr. Guy stated that these two employees were young, African-American males, and were wearing aprons that appeared to him to be damp. Tr. 34:13—23. According to Mr. Guy, water from the dripping cart had accumulated into several depressions in the pathway where Plaintiff fell. Tr. 35:1—36. After Plaintiff fell, Mr. Guy testified that he asked the two employees nearby to assist Plaintiff in standing, which they did. Tr. at 35:1—8; 51:9—21; 53:15—23. Mr. Guy further stated he was sure that the two employees standing near the parked cart

---

[3] Mr. Guy earlier indicated that did not walk in front of Plaintiff prior to the fall. After observing the video, he later provided the aforementioned explanation. Tr. 45:21—46: 21

[4] Mr. Guy seemed to equivocate on whether he saw the parked dish cart before Plaintiff's fall. Tr. 49:5—25; 51:6—16; 167:11—19; 170:9—17.

4

at the time Plaintiff fell were the employees that helped Plaintiff. Tr. 51:9—21; 171:18—17.

In the statement Mr. Guy gave later that evening regarding Plaintiff's fall, he wrote that he was "walking to paddock cart parked @ kitchen door dripping water Mr. William slipped in small puddle falling in his right and wrist."

**D. Mr. Kennerson's testimony and incident statement**

Mr. Kennerson identified himself at trial as the employee pulling the dish cart in the video. Tr. 128:8—129:2. Mr. Kennerson testified that when he extended his left arm to point in the video, he was in fact gesticulating in response to having just observed Plaintiff fall at a distance ahead of him. Tr. 133:15—21; 134:3—20. Mr. Kennerson stated that once he reached Plaintiff, he parked his cart by the employee entrance near where Plaintiff fell. Tr. 133:19—134:2; 135:13—24. Thereafter, Mr. Kennerson testified that he and Mr. Rubin helped Plaintiff to stand. Tr. 133:22—134:2; 135:13—24; 136:10—13. Mr. Kennerson further testified that: (1) his cart was behind Plaintiff when Plaintiff fell; (2) his cart never crossed Plaintiff's path; (3) his cart was the only one in the area when Plaintiff fell; and (4) he and Mr. Rubin were the only employees in the area when Plaintiff fell. Tr. 134:12—24; 139:8—20; 145:5—7. Mr. Kennerson also stated that he did not see water on the floor where Plaintiff fell or on his clothes. Tr. 136:14—18.

In the statement Mr. Kennerson gave later that evening regarding Plaintiff's fall, he wrote that "all I seen was a guy fall on the floor in front so me and other

5

employees asked if he needed any help and we helped him up cuz he said he was ok but we thought it was a heart attack or he jus slipped but we were only tryin to help."

### E. Mr. Rubin's testimony and incident statement

Mr. Rubin identified himself as the employee walking in front of the dish cart in the video. Tr. 148:1—2. According to Mr. Rubin's testimony, he and Mr. Kennerson were behind Plaintiff when Plaintiff fell. Tr. 153:5—15. Once they reached Plaintiff and after Mr. Kennerson parked his dish cart near the employee entrance, Mr. Rubin stated that he and Mr. Kennerson assisted Plaintiff. Tr. 153:13—21; 156:4—7. Mr. Rubin testified that he did not see water on the floor where Plaintiff fell or on Plaintiff's clothes. Tr. 154:5—8. Additionally, Mr. Rubin testified that he did not see any other cart or employee in the area when Plaintiff fell. Tr. 156:15—22; 157:10—15.

In the statement Mr. Rubin gave later that evening regarding Plaintiff's fall, he wrote that "[w]hen we were going upstairs to the Clubhouse we witness [sic] a man slip and fall. I don't know how but there was no 'water' on the floor. We helped him up."

In addition to the foregoing, Mr. Kennerson and Mr. Rubin testified that Defendant maintains a policy that prohibits workers from pushing wet carts. Tr. 130:13—131:21; 151:16—152:4; 152:13—23. Both witnesses stated that Defendant's policy requires employees to examine carts prior to moving them to look for wetness or leakage. *Id.* Additionally, Defendant's policy requires employees to contact

housekeeping if a cart is wet. *Id.* Lastly, both witnesses testified that they had pulled carts over five hundred times without any incident. Tr. 130:6—17; 152:5—12.

### III. Conclusions of Law

Plaintiff's "slip and fall" claim is governed by Louisiana's merchant liability statute, La. Rev. Stat. § 9:2800.6. *See Attaway v. Albertson's Inc.*, 174 F. App'x 240, 242 (5th Cir. 2006). The statute provides:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care.
>
> C. Definitions:
>
> (1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
>
> (2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this

7

> Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.
>
> D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

La. Rev. Stat. § 9:2800.6(B); *Cates v. Dillard Dep't Stores, Inc.*, 624 F.3d 695, 696 (5th Cir. 2010). A plaintiff cannot succeed if he fails to prove by a preponderance of the evidence any of the requirements of the above statute. *Richardson v. Louisiana–1 Gaming*, 10–262 (La.App. 5 Cir. 12/14/10); 55 So.3d 893, 895 (citing *Harrison v. Horseshoe Entertainment*, 36,294 (La.App. 2 Cir. 8/14/02), 823 So.2d 1124).

The statute's constructive notice requirement creates a nebulous burden of proof. *See White v. Wal-Mart Stores, Inc.*, 699 So.2d 1081, 1085—86 (La. 1997) ("Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some period of time prior to the fall."). The Louisiana Supreme Court has held that plaintiffs must produce some form of "positive evidence" to demonstrate how long a spill existed prior to an accident. *Id.* at 1086. "The requirement of positive evidence may be satisfied by presenting either direct or circumstantial evidence." *Crawford v. Ryan's Steak Houses, Inc.*, 741 So.2d 96, 101 (La.App. 2 Cir. 1999).

IV. **Discussion**

This case is complicated by Plaintiff's failure to remain at the site where he fell until an incident report was completed. Viewed in connection with the limited video evidence provided at trial, the Court finds that Mr. Kennerson and Mr. Rubin were

8

credible witnesses; they responded to questions from counsel and the Court directly without pause or forethought. The Court accepts as true their testimony that: (1) they were the employees who assisted Plaintiff in standing after his fall;[5] (2) they were the only employees in the area when Plaintiff fell; (3) their dish cart never crossed Plaintiff's path, a fact corroborated by the video; and (4) the dish cart they were responsible for was the only cart in the area when Plaintiff fell.

In light of the aforementioned findings, the Court concludes that the facts do not support Plaintiff's theory with respect to the source of the liquid that he purportedly slipped on, *i.e.* liquid dripping from an unidentified cart, parked by two unidentified employees, who were standing near the employee entrance where he fell.[6] *See Evans v. Winn-Dixie Montgomery, LLC*, 15-191, p. 9 (La.App. 5 Cir. 10/28/15); 177 So.3d 386, 392, *reh'g denied*, (Nov. 19, 2015) (where, like here, the

---

[5] This first finding, standing alone, makes the testimony of Mr. Guy and Plaintiff problematic. Mr. Guy and Plaintiff both indicated that at the time of the fall, two unidentified employees were standing near the employee entrance next to an unidentified parked cart, and that it was these two employees who assisted Plaintiff. Tr. 51:9—21; 53:15—18; 68:18—25; 100:8—11. To accept Plaintiff and Mr. Guy's version of events invites the following speculation: (1) Mr. Kennerson and Mr. Rubin, at the very least, misrepresented their participation in assisting Plaintiff after his fall, or (2) Plaintiff and Mr. Guy misidentified the two employees who rendered him assistance. The Court has already determined that the testimony of Mr. Kennerson and Mr. Rubin is credible. This second permutation would require the Court to conclude, *inter alia*, that two unidentified employees, upon seeing a disabled man slip and fall nearby, resisted any instinct to help and left the scene or, alternatively, offered assistance and/or remained in the area without anyone being able to identify them.

[6] In reaching this conclusion, the Court notes the following: (1) Plaintiff did not identify the parked cart that was purportedly leaking liquid prior to his fall; (2) Plaintiff did not identify the two employees that were purportedly standing near the leaking cart prior to his fall; and (3) Plaintiff did not identify any other patron walking on the pathway—and the video indicates that there were many—that saw a cart leaking liquid near the site of his fall. As indicated *infa*, these failings are at least in part attributable to Plaintiff hastily leaving the scene of his fall to watch his horse race, rather than remain to assess the existence of witnesses and give a contemporaneous incident report that would have permitted a more complete investigation. The Court also notes that Plaintiff was vague on whether he was certain that the liquid he slipped on came from a cart that was parked near the employee entrance at the time of his fall. Tr. 104:16—109:3; Tr. 110:5—111:14; 111:23—112:6.

source of the liquid that created a hazard was unclear). For this same reason, the facts do not support a finding that Defendant, through the action or inaction of its employees, created the hazard that caused him to fall.

The Court also finds that Plaintiff failed to demonstrate that Defendant had actual or constructive knowledge of the liquid upon which Plaintiff purportedly slipped. *See id.* (instructing that "[c]onstructive notice means that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care") (internal quotations omitted) (citing *Trench v. Winn–Dixie Montgomery LLC*, 14–152 (La.App. 5 Cir. 9/24/14); 150 So.3d 472, 475). Plaintiff offered no direct or circumstantial evidence as to the length of time the hazardous condition he slipped on existed. Because the Court accepts as true Mr. Kennerson and Mr. Rubin's testimony that they were the only employees who were nearby when Plaintiff fell, the Court has no factual basis to conclude that any other employee of Defendant was positioned to see a hazard on the pathway.

## V. CONCLUSION

The Court has no doubt that Plaintiff slipped, fell, and injured himself, and that he sincerely believes he slipped on liquid coming from a cart parked near the employee entrance. However, upon review of the evidence and testimony presented at trial, and after making the foregoing credibility determinations, the factual findings made by the Court lead to the conclusion that Plaintiff has not met his burden of demonstrating that Defendant was legally responsible for his fall and subsequent injury. Judgement will therefore be entered in favor of Defendant.

Baton Rouge, Louisiana, this 21st day of July, 2016.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA